IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MARCY A. JOHNSON, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No. 2:10-CV-04027-NKL ) |
| v. | ) ) |
| WEST PUBLISHING CORP., | ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is the Motion to Certify Class [Doc. # 55] filed by Plaintiff Marcy A. Johnson as putative class representative. For the following reasons, the Court grants the motion.

**I.      Background**

On February 19, 2010, Plaintiff Marcy A. Johnson ("Johnson") filed her Complaint, which made the following allegations. Defendant West Publishing Corporation ("West") is a corporation specializing in legal publishing, online information delivery, and various other legal information products. West has obtained, and continues to obtain, large databases of motor vehicle records containing personal information from each of the following states: Alabama, Alaska, Colorado, Connecticut, Florida, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana,

Nebraska, Nevada, New Mexico, New York, North Dakota, Ohio, Tennessee, Texas, Utah, Wisconsin, Wyoming, and the District of Columbia (the "Class States"). The information databases obtained by West from the Class States contain "personal information" and "highly restricted personal information" – as defined by the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721, et seq. – belonging to millions of licensed drivers, including Johnson and the putative class members. West made the information available for search and sale on the Internet via websites that it controlled and operated. The personal information or highly restricted personal information of Johnson and the putative class members was obtained and disseminated by West for purposes not permitted by the DPPA.

In 1994, Congress enacted the DPPA to protect the privacy of drivers. The DPPA makes it generally "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). Although the DPPA generally prohibits obtainment and disclosure of drivers' personal information, Section 2721(b) lists the fourteen permissible uses that are exceptions to this rule. Those uses are:

(1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

(2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

2

(3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only-

    (A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

    (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

(4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

18 U.S.C. § 2721(b). The DPPA creates a federal, civil cause of action for any "individual to whom the information pertains" against a violator of the statute. 18 U.S.C. § 2724(a).

Johnson's Complaint sets forth three Counts. Count I asserts a violation of the DPPA: "Defendant knowingly obtained, disclosed, and/or sold Plaintiff's and the putative Class members' personal information or highly restricted personal information, as defined by the DPPA, for a use or uses not permitted under the statute." *Id.* at ¶ 29. Count I prays for damages. Count II asserts a claim for unjust enrichment and seeks disgorgement. Finally, Count III asserts a claim for injunctive relief, based on DPPA violations.

On May 11, 2010, the Court granted West's Motion to Dismiss Count II of Johnson's Complaint. [Doc. # 22.]

Johnson now moves for certification of the following class:

All persons who registered a motor vehicle in, or were issued a driver's license or state identification card by, the States of Alabama, Alaska, Colorado, Connecticut, Florida, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, New York, North

4

Dakota, Ohio, Tennessee, Texas, Utah, Wisconsin, Wyoming and the District of Columbia, whose personal information or highly restricted personal information, as defined by 18 U.S.C. §§ 2725(3) and (4), was obtained, disclosed, or sold by Defendant, or any agent, officer, employee, or contractor of Defendant between February 19, 2006 and the date of final judgment in this matter (the "Class"). The Class excludes Defendant's directors, officers, parent corporations, subsidiaries, and affiliates.

[Doc. # 55.]

## II. Discussion

A motion for class certification involves a two-part analysis. First, the movant must demonstrate that the proposed class satisfies the requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Second, Johnson must demonstrate that the proposed class fits into one of the three categories identified in Rule 23(b). Thus, the action must either (1) create a risk of establishing incompatible standards of conduct through inconsistent adjudications or substantially impair the interests of individuals not party to the litigation, Rule 23(b)(1); or (2) involve a party opposing the class who acted on grounds that apply generally to the class, Rule 23(b)(2); or (3) involve a court finding both that questions of law or fact common to class members predominate over individual questions and that a class action

5

is "superior to other methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3).

Johnson bears the burden of showing that the Rule 23 requirements are met and that the class should be certified. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). To determine whether class certification is appropriate, the Court must conduct a limited preliminary inquiry, looking behind the pleadings. *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). "In conducting this preliminary inquiry, however, the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs['] general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Id.* at 566. In considering class certification motions, the Court liberally construes Rule 23(a) and does not resolve the merits of the dispute. *See Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003); *In re Control Data Corp. Sec. Litigation*, 116 F.R.D. 216, 219 (D. Minn. 1986) *rev'd on other grounds*, *In re Control Data Corp. Sec. Litigation*, 933 F.2d 616 (8th Cir. 1991).

### A. Federal Rule of Civil Procedure 23(a)

#### 1. Numerosity

To address the numerosity requirement, the Court should examine the number of persons in a proposed class, the nature of the action, the size of the individual claims and the inconvenience of trying individual claims, as well as other factors. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982).

6

Johnson's proposed class consists of all persons who registered a motor vehicle in or were issued a driver's license or state identification card by 29 states (plus the District of Columbia) since February 19, 2006, and whose personal information was obtained, disclosed, or sold by West. West does not challenge the proposed class on grounds of numerosity. Trying each of these cases individually would be highly inconvenient. Therefore, the numerosity requirement of Rule 23(a) is satisfied. *See Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) (certifying a class of between 20 and 65).

### 2. Commonality

The commonality requirement of Rule 23(a)(2) is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (citation omitted). To determine whether common questions of law or fact predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings. *Blades*, 400 F.3d at 566. In *Blades*, the Eighth Circuit authorized district judges to inquire into the merits when a factual dispute necessary for deciding class certification overlaps with the merits, but only insofar as necessary to "determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations are true, to make out a prima facie case for the class." *Blades*, 400 F.3d at 567.

First, the Court examines the elements of a prima facie case under the DPPA. Basically, Johnson must prove that West (1) knowingly obtained, disclosed, or used personal information, (2) from motor vehicle records, (3) for a purpose not permitted. *See*

7

18 U.S.C.§ 2724(a). Although Johnson has the burden of proving these elements, under the DPPA there are only fourteen permissible purposes of personal information, beyond which all purposes are impermissible. *See* 18 U.S.C. § 2721(a) ("In general" prohibiting disclosure of personal information "except as provided in subsection (b)"); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title.").

The DPPA provides special definitions for "personal information," highly restricted personal information," and "motor vehicle record." The DPPA defines "personal information" as

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3). The DPPA creates an even higher level of protection for "highly restricted personal information" – defined as "an individual's photograph or image, social security number, medical or disability information" – which may be obtained or disclosed only with the consent of the individual or pursuant to the limited "uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9)." 18 U.S.C. §§ 2721(a)(2), 2725(4). Meanwhile, the statute defines "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C. § 2725(1).

Johnson identified eight potential questions of law or fact that are common to the putative class. West usefully grouped these into three basic issues: (1) West's conduct in allegedly obtaining information covered by the DPPA; (2) West's conduct in allegedly disclosing information covered by the DPPA; and (3) the nature and extent of damages. West argues that all three of these issues lack commonality sufficient for class certification. The Court is not persuaded by these arguments.

West first argues that these issues are not common between individuals who registered their driver's licenses and individuals who registered a motor vehicle because West obtained different information from each of these two groups of people. But the DPPA makes no substantive distinction between these categories of information, and instead distinguishes only between personal information, highly restricted personal information, and information that does not qualify as personal information. In fact, the DPPA expressly includes both driver's license information and vehicle title information under the common category "motor vehicle record." Johnson has alleged that no factual difference exists in how West obtained these two kinds of information, and so the manner in which West obtained this information is a question of fact common to the class. Further, because the DPPA does not distinguish these two types of information, the legality of the manner in which West obtained this information is a question of law common to the class.

West argues second that issues are not common between individuals whose personal information West (1) did not sell; (2) sold for an authorized purpose; and (3)

9

sold for a purpose not authorized by the DPPA. This argument fails for similar reasons. Johnson alleges that West obtained and disclosed information covered by the DPPA pursuant to its business model. West's business model for obtaining and then selling information is a question of fact common to all putative class members. This is so regardless of whether this business model resulted in some individual sales for uses authorized by the DPPA.

Finally, West argues that damages are not common to the putative class because Johnson did not suffer actual damages and because the actual damages of each class member requires individual inquiry.[1] Johnson asserts that each putative class member is entitled to uniform statutory damages, which West disputes. Because this legal dispute is so near the merits of this case, the Court refrains from resolving it at this time but assumes that Johnson is correct for the purposes of class certification. If later in the litigation it appears appropriate to engage in fact-intensive scrutiny of the actual damages of individual class members, the Court can take action to preserve the efficiency and fairness of the lawsuit.

Because the central legal issue of this suit is common to all potential plaintiffs, the commonality requirement of Rule 23(a) is satisfied. The distinctions between class members pointed to by West pale in comparison with the commonality of this lawsuit's

---

[1] Because Johnson claims that the vast majority of putative class members did not suffer actual damages, whether Johnson suffered actual damages does not bear directly on commonality but will be taken up below as an argument against adequacy.

10

core issue, which is West's alleged conduct in obtaining data from states' driver's license databases and disseminating it to third parties on the Internet.

### 3. Typicality

The third requirement of Rule 23(a)(3) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). Typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). The burden is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (holding that plaintiffs satisfied the typicality requirement, even though they carried different mortgage instruments, because the important inquiry was the mortgage servicer's over-escrowing of funds).

West erroneously relies on its distinction between data from driver's license records and data from vehicle title records to argue that Johnson is not typical of the putative class. But, as explained above, the DPPA makes no substantive distinction between these categories of information, categorizing them both simply as "motor vehicle record[s]."

Johnson's claim that West unlawfully obtained her personal information from a database of motor vehicles and disseminated it on the Internet for purposes not permitted under the DPPA is typical of the putative class. Under West's analysis, no DPPA claim would ever be typical because the information for each driver is different. However, the

11

core question is whether West's interpretation of the DPPA is correct and that interpretation is consistent regardless of what information is being released. Johnson has met her burden of establishing that other potential members of the class have the same or *similar* grievances as Johnson.

### 4. Adequacy

The final requirement of Rule 23(a) is that the class representative and class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4). The purpose of the adequacy requirement is to ensure that there are no potential "conflicts of interest between the named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

West challenges the adequacy of the class representative, arguing in a footnote that

> Plaintiff also will not fairly and adequately protect the interests of the class. She does not know what damages she is seeking, and she has no knowledge and no evidence that her personal information (or anyone else's) was obtained, searched, used or disclosed by anyone. She has not been involved in the case, has no knowledge about the allegations in the complaint, has had no input in responding to document requests and interrogatories served upon her, and was not asked to review records or provide records in response to document requests.

[Doc. # 58 at 10 n.9 (citations omitted).]

West fails to rebut Johnson's representations regarding the adequacy of the class representative. West has pointed to no divergence in Johnson's interests and those of the rest of the class. West claims elsewhere in its brief that Johnson did not suffer actual damages in this case. As a factual matter, this is not problematic for class adequacy

12

because West also asserts that the "vast majority" of the putative class suffered no actual damages [Doc. # 58 at 1]. As a legal matter, this argument is not problematic because actual damages are not traditionally needed for recovery under the DPPA. *Kehoe v. Federal Bank & Trust*, 421 F.3d 1209, 1212 (11th Cir. 2005); *Pichler v. UNITE*, 542 F.3d 380, 398 (3d Cir. 2008). Thus, the distinction is legally irrelevant and does not interfere with Johnson's adequacy as class representative.

West has also failed to call into question the adequacy of Johnson's representation. "In the absence of proof to the contrary, courts presume that Class counsel is competent and sufficiently experienced to vigorously prosecute the class action." *Morgan v. United Parcel Serv. of America, Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996). Class counsel have pointed to their experience in previous class action lawsuits. For purposes of this motion, Johnson has shown that class counsel will fairly and adequately represent the class.

### B. Federal Rule of Civil Procedure 23(b)

In addition to meeting the requirements of Rule 23(a), a case must also meet the requirements of one of the subsections of Rule 23(b) in order to proceed as a class action. Rule 23(b)(3) provides that a class should be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts commonly refer to these two requirements as "predominance" and "superiority."

#### 1. Predominance

13

Rule 23(b)(3)'s predominance element requires the Court to explore "whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Id*. "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id*. "In making its determination, the district court must undertake a rigorous analysis that includes examination of what the parties would be required to prove at trial" and "may also be called upon to resolve disputes concerning the factual setting of the case." *Id.* (Internal quotes omitted).

West argues that individual issues predominate in this action because West's conduct varies depending on the (1) type of data obtained (driver's license data or vehicle registration data); (2) state which released the data; (3) year of the record; and, perhaps (4) method of dissemination. That West collected only driver's license information in some states and only vehicle title information in others is irrelevant for purposes of class certification because there is no evidence that the DPPA treats this information differently in the context of Johnson's claims. Further, class members from any state could recover based on common evidence – West's approach to obtaining and selling motor vehicle records. Likewise, that West did not collect any private information from a given state at a given time is irrelevant for the present inquiry. Individuals in such a state simply will not qualify as a member of a class. Some degree of individualized evidence is necessary

14

to determine if an individual is a member of a certified class in the first place; that does not mean that class certification is inappropriate. Further, this issue goes to the merits of Johnson's claim and the Court, to the extent possible, will not resolve the merits of a dispute in the context of a motion for class certification.

The Court also rejects West's argument that a class action is not appropriate because it disseminates information through portals to third-party computer systems, and that the content that can be accessed through these portals (and, perhaps, the qualifications needed to access the information) have changed over time. [Doc. # 58 at 1-5]. Thus, theoretically, some members of the class might differ in that West sold some of their information with minimal protections and for purposes not authorized under DPPA while selling other members' information with greater protections and for authorized purposes.

This potential variance in how West sold information is not an obstacle to class certification. First, a prima facie case under DPPA only requires a plaintiff to show that a defendant either obtained or distributed private information. Membership in the putative class is contingent on the same. On the information before the Court, it appears most, if not all, class members would be able to use common evidence in support of their claims concerning obtainment. Where this is true, there would presumably be no need to prove wrongful distribution of that information in order to make a prima facie case. Thus, most, if not all, putative class members could state a prima facie case with common evidence on this issue alone.

The core question is whether common questions of fact or law predominate. Clearly, the interpretation of the DPPA is the common question of law that dominates and any differences between the class do not warrant separate treatment at this stage of the litigation.

For all of the foregoing reasons, the Court concludes that common questions predominate over individual ones, and that individual putative class members will be able to prove a prima facie case using common evidence.

### 2. Superiority

Class action litigation is the superior method for adjudicating this claim. The superiority element of Rule 23(b)(3) requires the Court to explore whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

West cites a New York case for the proposition that "where the statutory damages sought vastly outweighs any actual harm sustained by the class members . . . class certification should be denied." [Doc. # 58 at 14 (citing *Ratner v. Chem. Bank New York Trust Co.*, 54 F.R.D. 412 (S.D. N.Y. 1972).] According to West, the class action device is not superior because Johnson seeks to impose statutory damages totaling billions of dollars.

West's concerns are not a sufficient reason to deny class certification. Although the United States Court of Appeals for the Eighth Circuit has not addressed this issue, the Seventh Circuit has held that such concerns are best considered after the class has been

certified. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006). Denying class certification in order to limit recovery by forcing plaintiffs to litigate independently "has little to recommend it." *Murray*, 434 F.3d at 854; *see generally In re Federal Skywalk Cases*, 680 F.2d 1175, 1188 (8th Cir. 1982) (upholding class certification under 23(b)(1) and observing that individual claims could violate due process by resulting in "unlimited multiple punishment for the same act"). Given the large number of potential plaintiffs and the commonality of their claims, certifying the class will allow a more efficient adjudication of the controversy than would individual adjudications.

For the reasons stated above, this class action is certified under Rule 23(b)(3). Therefore, there is no need for the Court to address the parties' arguments under Rule 23(b)(1) or Rule 23(b)(2).

### III. Conclusion

Accordingly, it is hereby ORDERED that the Motion to Certify Class [Doc. # 55] filed by Plaintiff Marcy Johnson as putative class representative is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 9, 2011  
Jefferson City, Missouri